**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

<div style="float:left">

CHAMBERS OF
J. MARK COULSON
UNITED STATES MAGISTRATE JUDGE

</div>

<div style="float:right">

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
Phone: (410) 962-4953
Fax: (410) 962-2985

</div>

April 3, 2018

LETTER TO ALL COUNSEL OF RECORD

      Re:    *Pough v. Social Security Administration*[1]
             Civil No. 17–cv–00015–JMC

Dear Counsel:

On January 4, 2017, Ms. Kristi Pough petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 15, 18). I find that no hearing is necessary. Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and correct legal standards were employed. 42 U.S.C. § 405(g); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Ms. Pough's Motion, grant the Government's motion, and affirm the Social Security Administration's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Ms. Pough filed a claim for benefits on August 8, 2012, and subsequently amended her alleged onset date of disability to July 11, 2012. (Tr. 232–40; 252). Her claim was denied initially and on reconsideration following appeal. (Tr. 59–68; 96–108). Administrative Law Judge ("ALJ") Anthony J. Johnson, Jr. held a hearing on June 24, 2015. (Tr. 29–57). Following that hearing, on July 28, 2015, the ALJ determined that Ms. Pough was not disabled during the relevant time frame. (Tr. 13–23). The Appeals Council denied Ms. Pough's request for review on November 4, 2016, making the ALJ's decision the final, reviewable decision of the Agency. (Tr. 1–4).

In arriving at his decision to deny Ms. Pough's claim, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ("RFC"), "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work," by considering all of the claimant's medically determinable impairments regardless of severity.

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner of Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

*Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If she makes the requisite showing, the burden shifts to the Social Security Administration at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

In this case, at step one, the ALJ found that Ms. Pough had not engaged in "substantial gainful activity" since July 11, 2012, the amended alleged onset date. (Tr. 16). At step two, the ALJ determined that Ms. Pough's attention deficit hyperactivity disorder (ADHD), bipolar disorder, anxiety disorder, panic disorder, and history of cocaine abuse constitute severe impairments under the relevant regulations. *Id.* At step three, the ALJ found that Ms. Pough does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Then, "[a]fter careful consideration of the entire record," the ALJ determined that Ms. Pough has the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out simple and routine work-related instructions; she can concentrate for periods of two hours on work-related tasks before requiring a break; and she can occasionally work with the public, coworkers, and supervisors." (Tr. 17). At step four, the ALJ explained that Ms. Pough has no past relevant work. (Tr. 22). Finally, after considering the testimony of a vocational expert, the ALJ determined that Ms. Pough can perform work existing in significant numbers in the national economy and that she was therefore not disabled during the relevant time frame. *Id.*

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (internal citations and quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal citations and quotations omitted). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

On appeal, Ms. Pough argues that: (1) the ALJ failed to set forth a narrative discussion to support his findings regarding her RFC; (2) the ALJ's limitation of Ms. Pough to the performance of simple and routine work-related instructions is inappropriate under *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015); (3) the ALJ failed to evaluate the opinions of Dr. Smith, Ms. Pough's treating physician; and (4) the ALJ failed to properly evaluate the opinion of a state agency physician. Ms. Pough's arguments lack merit and will be addressed in turn.

*Narrative Discussion*

Ms. Pough first argues that, in his RFC determination, the ALJ failed to set forth a narrative discussion to support his findings. Specifically, Ms. Pough asserts that the ALJ "provided no explanation to support his findings" that she could "understand, remember, and carry out simple and routine work-related instructions, could concentrate for periods of two hours, and could occasionally work with the public, coworkers, and supervisors." (ECF No. 15-1 at 6). Social Security regulations require an ALJ to include a "narrative discussion of the claimant's symptoms and medical source opinions" to support the RFC determination. *White*

*v. Commissioner*, Civ. No. SAG–16–2428, 2017 WL 1373236, at \*1 (D. Md. Apr. 13, 2017) (internal citation and quotations omitted). Specifically, an ALJ's "RFC assessment is sufficient if it includes a narrative discussion of the claimant's symptoms and medical source opinions." *Bowers v. Commissioner*, Civ. No. SAG–11–1445, 2013 WL 150023, at \*2 (D. Md. Jan. 11, 2013) (quoting *Taylor v. Astrue*, Civ. No. BPG–11–0032, 2012 WL 294532, at \*6 (D. Md. Jan. 31, 2012)). Here, the ALJ provided a four-page narrative on Ms. Pough's RFC, in which he summarized Ms. Pough's hearing testimony, her symptoms, and the relevant medical evidence. (Tr. 17–22). The ALJ discussed the reports from Dr. Miller and Dr. Estwick, and noted that he considered the opinions of state agency medical and psychological consultants as well as an assessment from a licensed clinical social worker. (Tr. 18–21). The ALJ also cited "the claimant's poor treatment compliance, and the fact that she was able to go significant time periods without regular treatment beyond medication." (Tr. 20). Accordingly, the ALJ set forth a sufficient narrative discussion of Ms. Pough's symptoms and the medical source opinions. Ms. Pough's first argument fails.

*Simple and Routine Work-Related Instructions*

Ms. Pough's second argument relies on the Fourth Circuit's holding in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), and asserts that the ALJ failed to explain how a limitation to simple and routine work-related instructions within the RFC determination properly accounts for Ms. Pough's limitations in concentration, persistence, or pace. In *Mascio*, the ALJ did not include any mental limitations in the RFC assessment other than "unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace." *Roxin v. Commissioner*, Civ. No. SAG–14–2311, 2015 WL 3616889, at \*2 (D. Md. June 5, 2015) (citing *Mascio*, 780 F.3d at 637–38). In its holding, the Fourth Circuit "emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that '[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.'" *Id.*

Here, at step three, the ALJ determined that Ms. Pough has moderate difficulties in concentration, persistence, or pace. (Tr. 17). However, unlike in *Mascio*, where the ALJ merely limited the claimant to "simple, routine tasks" or "unskilled work," the ALJ here explained Ms. Pough's nonexertional limitations in greater detail: "she can understand, remember, and carry out simple and routine work-related instructions; she can concentrate for periods of two hours on work-related tasks before requiring a break; and she can occasionally work with the public, coworkers, and supervisors." (Tr. 17). Although Ms. Pough asserts that the ALJ only limited her to "simple and routine work-related instructions," in actuality, the ALJ included specific limitations to account for her mental impairments, including the two-hour concentration period and only occasional work with others. These additional limitations that the ALJ included in the RFC assessment certainly account for Ms. Pough's limitations in concentration, persistence, or pace with regard to her ability to stay on task, as opposed to her ability to perform simple tasks, as the Fourth Circuit required in *Mascio*. Ms. Pough's second argument is therefore unavailing.

*Consideration of Physician Opinions*

In her final two arguments, Ms. Pough claims that the ALJ failed to evaluate the opinions of Dr. Smith, her treating physician, and a state agency physician. First, Ms. Pough argues that the ALJ confused the evidence and analyzed a 2013 questionnaire completed by Dr. Smith under the false assumption that the questionnaire was completed by Dr. Miller, a consultative examiner, instead. (Tr. 21, 386). The Government admits that the ALJ did mistakenly interpret Dr. Smith's report as being authored by Dr. Miller and analyzed

the report as if it had been submitted by Dr. Miller instead of Dr. Smith, but argues that such error is harmless because the fact that Dr. Miller is a consultative examiner and not a treating physician was only a small part of the ALJ's analysis of the report and Ms. Pough failed to show that Dr. Smith's opinion was entitled to greater weight. According to the "treating physician rule," "the ALJ must generally give more weight to a treating physician's opinion, . . . but where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be afforded significantly less weight." *Rivers v. Colvin*, Civ. No. TMD–12–3265, 2013 WL 5797344, at *2 (D. Md. Oct. 25, 2013) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) and *Craig v. Chaters*, 76 F.3d 585, 585, 590 (4th Cir. 1996)). ALJs must consider various factors when determining the amount of weight to give treating physicians' findings: (i) the "length of the treatment relationship and the frequency of examination;" (ii) the "nature and extent of the treatment relationship;" (iii) the evidence offered that supports the treating physician's opinion; (iv) the consistency of the treating physician's opinion with the entire record as a whole; (v) whether the treating physician is a specialist; and (vi) any other relevant factors "which tend to support or contradict the medical opinion." 20 C.F.R. § 416.927(c)(1–6).

Here, although the ALJ did confuse the physician that authored the evaluation, such error was harmless, as the ALJ cited other evidence of record as his explanation for assigning "partial weight" to the evaluation. In his analysis, the ALJ explained, "[The 2013 evaluation] was performed some two years ago, and was based on a single session with the claimant. The limitations he found are supported by the record in general, but he overstated the severity of those limitations. As shown by the medical evidence described above, the claimant's mental impairments are not as severe as Dr. Miller suggested, and the record shows that she maintains a much greater degree of functioning." (Tr. 21). Although the ALJ does mistakenly reference the fact that the evaluation was based on a single session with Ms. Pough, the bulk of his analysis, and the explanation for his assignment of partial weight, is related to the age of the report and the inconsistency between the severity of Ms. Pough's impairments in the 2013 evaluation and the severity of her impairments in the other medical evidence of record. Substantial evidence of record regarding the severity of Ms. Pough's impairments, including other medical evidence and her own hearing testimony, supports the ALJ's conclusion that she maintains a greater degree of functioning than otherwise described in the 2013 evaluation. The ALJ's error, although clear, is thus harmless in this regard.

Second, Ms. Pough argues that the ALJ failed to properly consider the opinion of a state agency physician. Specifically, she asserts that "one of the physicians who evaluated this claim on behalf of the Commissioner determined that [she] was limited to the performance of only one to two step tasks" and that "[a]lthough this finding conflicted with the Administrative Law Judge's residual functional capacity assessment, he failed to explain his implicit rejection of this evidence." To the contrary, the ALJ's RFC assessment seems to be in line with the state agency consultant's evaluation. Ms. Pough's RFC assessment includes the limitation that "she can understand, remember, and carry out simple and routine work-related instructions," which does not conflict with a limitation "to the performance of only one to two step tasks." Furthermore, the report that Ms. Pough cites actually states that Ms. Pough's "ability to carry out very short and simple instructions" is "[n]ot significantly limited," and that Ms. Pough is ultimately still capable of performing work in retail and as a cashier. (Tr. 90, 92). The ALJ's conclusions regarding Ms. Pough's RFC are clearly supported by substantial evidence of record. Ms. Pough's arguments regarding the ALJ's failure to properly consider physician opinions are without merit.

Because there is substantial evidence to support the ALJ's findings and the findings were reached through application of the correct legal standards, Ms. Pough's Motion for Summary Judgment (ECF No. 15) is

DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED, and the Social Security Administration's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405. The Clerk is directed to CLOSE this case.

      Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket is as such.

Sincerely yours,

/s/
J. Mark Coulson
United States Magistrate Judge